J-A05044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHANACE R. ARMSTRONG WOODS :
:
Appellant : No. 164 EDA 2025

Appeal from the Judgment of Sentence Entered December 13, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000396-2018

BEFORE: KUNSELMAN, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JULY 22, 2026**

Shanace R. Armstrong Woods ("Woods") appeals from the judgment of sentence imposed after the trial court found her in violation of probation ("VOP"). Woods contends the trial court imposed an illegal VOP sentence because her original probationary sentence expired before her violation. Because the trial court was entitled to rely on a Pennsylvania Department of Corrections ("DOC")/Board of Parole ("Board")[1] adjustment to a sentence when determining the maximum date of her original probationary sentence, Woods has not demonstrated her VOP sentence is illegal, and we affirm.

The facts and procedural history of this appeal are as follows. In 2018, Woods pleaded guilty to possession with the intent to deliver heroin ("PWID") and possession of an instrument of crime ("PIC"). In February 2019, the trial

---

[1] Although there are some references in the record to the Board of Probation and Parole, subsequent legislation effected a name change to the Board of Parole. *See* December 18, 2019, P.L. 776, No. 115 (eff. Feb. 18, 2020).

court ordered Woods to serve sixteen to fifty months of imprisonment in a state correctional institution ("SCI") for PWID and a consecutive twelve months of probation, to be supervised by the Board, for PIC.[2]

While she was serving her PWID sentence, the Board apparently released Woods from her SCI due to the COVID-19 pandemic ("the pandemic") and concerns about Woods's health. *See* N.T., 7/31/24, at 5, 8-9; N.T., 9/6/24, at 7 (indicating Woods was immuno-compromised). In July 2021, the DOC and/or Board adjusted the maximum date of her PWID sentence to March 2024 (the "2021 adjustment"). *See id*. at 8.[3] Based on the 2021 adjustment,

_____

[2] Based on the original sentence, the minimum and maximum dates for the PWID sentence would have been June 2020 and April 2023, respectively, with a maximum date of the probationary sentence for PIC being April 2024.

[3] A probation officer testified that the 2021 adjustment provided, in relevant part:

> Regarding . . . [Woods]. Parole No. 012JG. Institution, SCI Muncy. Institution No. PB6730. . .. As recorded on July 21st, 2021, the . . . Board rendered the following decision in your case: Due . . . to DOC sentence restructure, modify [B]oard action recorded on 3/18/2020 by changing maximum to now read: Max[:] 3/27/2024. Rest of action [B]oard [sic] remains the same.

N.T., 7/31/24, at 8. Although neither Woods nor the Commonwealth moved for the admission of the letter containing the 2021 adjustment into the record, Woods has included in her reproduced record a copy of that letter, which corroborates the officer's testimony about the contents of the 2021 adjustment.

Neither Woods nor the Commonwealth discuss in depth the 2021 adjustment's reference to a "DOC sentence restructure," upon which the Board apparently
*(Footnote Continued Next Page)*

the Commonwealth determined Woods's probation sentence for PIC started in March 2024 and would end in March 2025. **See** Petition for Violation of Special Probation, 6/25/24, unpaginated at 2; N.T., 9/6/24, at 7.[4] In June 2024, police arrested Woods for new drug offenses, and the Commonwealth filed a petition to revoke Woods's original probationary sentence.

Woods objected to the revocation proceeding and challenged the Commonwealth's assertion she was still serving the original probation sentence for PIC when she committed the new drug offenses. **See** N.T., 9/6/24, at 2. Woods acknowledged the 2021 adjustment to her original PWID sentence but claimed the Board lacked the authority to modify her sentence without a court order or a violation of parole. **See id**. at 3; **see also** N.T., 7/31/24, at 6. The Commonwealth conceded that, absent the 2021

_____

modified a prior action and adjusted the maximum date. Moreover, to the extent the Board action in March 2020 referred to Woods's release, her release would have occurred after the governor's declaration of a state of emergency due to the pandemic but before the governor ordered the DOC to establish a reprieve of sentence of incarceration program in April 2020. **See Fultze v. Parole Bd.**, 271 A.3d 539, 2021 WL 5917604, at *1 (Pa. Cmwlth. 2021) (memorandum opinion) (outlining the governor's orders addressing the pandemic); **see also Commonwealth v. Bowers**, 185 A.3d 358, 362 n.4 (Pa. Super. 2018) (explaining Commonwealth Court decisions are persuasive but not binding upon this Court); Pa.R.A.P. 126(b) (permitting citation to an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008).

[4] The Board apparently returned supervision to the county due to Woods's new arrest. **See** Petition for Violation of Special Probation, 6/25/24, unpaginated at 2.

adjustment, Woods's probation sentence would have ended before her new drug offenses. *See* Memorandum of Law, 9/10/24, at 1. However, the Commonwealth likened Woods's release to a "mid-sentence 'deferment[,]'" the adjustment for which would "not alter the length of the sentence itself." *Id*. at 4. The Commonwealth also asserted Woods had waived a challenge to the 2021 adjustment by not contesting the Board's actions promptly, and, in any event, the trial court lacked the authority to review or alter the 2021 adjustment in a revocation proceeding. *See id*. at 5-6. Woods maintained that, because no statute authorized the 2021 adjustment, the trial court had to conclude her original probation sentence for PIC ended before the new drug offenses and could no longer impose a legal VOP sentence. Response to Commonwealth Memorandum, 9/17/24, at 2-5.

The trial court revoked Woods's probation and re-sentenced Woods to twelve months less one day to twenty-four months less one day of imprisonment for PIC. Woods timely appealed and filed an unsolicited Pa.R.A.P. 1925(b) statement. Because the presiding trial judge retired, a different judge issued a Rule 1925(a) opinion identifying portions of the record at which the parties and the trial court discussed the above-stated issues.

Woods raises the following issues for review:

[]1. Whether the trial court erred in its determination that Woods remained on special probation at the time the violation of probation occurred.

- 4 -

[]2. Whether the trial court, in sentencing Woods, rendered an illegal sentence as Woods was no longer on special probation at the time the violation occurred.

Woods's Brief at 4. We address Woods's issues together because they are closely related.

"[I]n an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." *Commonwealth v. Wright*, 116 A.3d 133, 136 (Pa. Super. 2015) (citation omitted). The revocation of a probation sentence is a matter committed to the sound discretion of the trial court, and the court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. *See Commonwealth v. Shires*, 240 A.3d 974, 977 (Pa. Super. 2020). "In a revocation hearing the Commonwealth has the obligation of establishing its case by a preponderance of the evidence." *Wright*, 116 A.3d at 136 (citation omitted).

This Court has addressed a claim alleging the expiration of the original probation sentence as a challenge to the validity of the revocation proceeding, *see id*., or as challenge to the legality of the VOP sentence. *See Commonwealth v. Mathias*, 121 A.3d 558, 562 (Pa. Super. 2015). This

Court's standard of review relating to an illegal sentence is *de novo*, and our scope of review is plenary. **See id**.[5]

Woods's arguments hinge on her claim that the 2021 adjustment was unlawful because the Board lacked any statutory authority to adjust the maximum date of her sentence. **See** Woods's Brief at 5-9. Woods contends both the trial court and this Court have the authority to review the Board's unauthorized actions. **See id**. at 11. Citing **Mathias**, she concludes allowing the imposition of VOP sentence for a violation committed after she completed her original probation sentence would result in an illegal sentence. **See id**. at 11-13.

Because Woods's arguments implicate calculations associated with the running of sentences, it is helpful to recall that Pennsylvania divides the responsibility to administer sentences depending on the sentence imposed: that is, the trial court retains jurisdiction over county sentences but yields jurisdiction when the defendant is committed to the DOC on a state sentence. **See Commonwealth v. Mefford**, 863 A.2d 1206, 1209 (Pa. Super. 2004); **see also** 42 Pa.C.S.A. § 9762 (setting forth the condition under which a court may commit a defendant to the DOC for confinement or to county prison).

With respect to state sentences, the DOC is "responsible for calculating the minimum and maximum terms of prisoners committed to its jurisdiction."

_____

[5] Any distinction between an illegal sentence claim and a validity of the revocation proceeding claim is not material to the issues raised in this appeal.

*Nickson v. Bd. of Prob. & Parole*, 880 A.2d 21, 24 (Pa. Cmwlth. 2005) (citation and quotation marks omitted). The Board has the "exclusive power[ t]o parole and reparole, commit and recommit for violations of parole and to discharge from parole" persons sentenced to imprisonment in an SCI. 61 Pa.C.S.A. § 6132(a)(1)(i). In certain instances, the Board has the discretion to credit time spent at liberty on parole and compute a remaining sentence accordingly. *See*, *e.g.*, 61 Pa.C.S.A. § 6138(a)(2.1), (a)(4), (c)(2)-(3). As between the DOC and the Board, however, it is the DOC, not the Board, that has the general responsibility for calculating state sentences. *See Forbes v. Dep't of Corr.*, 931 A.2d 88, 95 (Pa. Cmwlth. 2007).

The distinctions between county and state sentences, as well as the DOC's and the Board's roles in state sentences, are important, because they establish the proper means for seeking redress from decisions by the trial court or county departments, the DOC, and the Board. A challenge to the DOC's erroneous computation of a sentence must be brought as an original action in the Commonwealth Court. *See Commonwealth v. Wyatt*, 115 A.3d 876, 879 (Pa. Super. 2015). A challenge to a Board decision requires a final order by the Board, typically issued upon the denial of administrative relief, and then seeking review in the Commonwealth Court. *See Gruff v. Bd. of Prob. & Parole*, 986 A.2d 953, 959 (Pa. Cmwlth. 2009) (discussing the Commonwealth's Court appellate jurisdiction over a Board decision). Notably, Woods has not cited, nor have we found, any statute, regulation, or

case law holding the court of common pleas may review a DOC or Board decision regarding a state sentence. Rather, case law suggests the contrary. *See also Dep't of Corr. v. Reese*, 774 A.2d 1255, 1262 (Pa. Super. 2001) (holding that a *habeas corpus* petitioner in the court of common pleas cannot assert an error in a Board recalculation of a maximum sentence when he did not challenge the Board's determination within thirty days).

Mindful of the different responsibilities and procedures governing county and state sentences, we conclude Woods has not established merit to her claim that her VOP sentence was illegal. First, Woods's reliance on *Mathias* is misplaced because that decision, which involved a county sentence of probation, did not implicate the divisions between the responsibilities of the county courts and departments, the DOC, and the Board. *See Mathias*, 121 A.3d at 560, 562-63.[6]

Second, Woods's claim that the Board lacked the authority to recalculate sentences without a court order or violation of parole, while true, does not necessarily reflect the record. As noted above, the 2021 adjustment referred to a "DOC sentence restructure" on which the Board modified a prior action to

_____

[6] Specifically, in *Mathias*, a county had a policy of not supervising probation cases during the pendency of an appeal and essentially attempted to toll the running of probation until appeals ended. *See Mathias*, 121 A.3d at 560-61. This Court concluded the county's policy "did not act to stay [Mathias's] probation and [did] not alter the fact that, during the pendency of his appeals [Mathias] was serving his sentence." *Id*. at 563. Under those circumstances, we conclude Mathias's probation expired before his violation.

reflect a new maximum date for Woods's original PWID sentence. N.T., 7/31/24, at 8. This phrasing appears critical because it belies her threshold contention that the Board *sua sponte* adjusted her PWID sentence contrary to its mandates under 61 Pa.C.S.A. § 6132(a)(1)(i) and 61 Pa.C.S.A. § 6138, and she has offered no arguments pertaining to the DOC. **Cf**. **Forbes**, 931 A.2d at 94 (noting the distinctions between the DOC's and Broad's authority with respect to state sentences); **Nickson**, 880 A.2d at 24 (same).

Third, we agree with the Commonwealth that, to the extent Woods disputed a calculation of a state sentence, the proper recourse would have been to challenge the 2021 adjustment by seeking administration relief and then review of a Board decision in the Commonwealth Court or by seeking relief from a DOC action in the Commonwealth Court's original jurisdiction. **See Reese**, 774 A.2d at 1262; **Gruff**, 986 A.2d at 959; **see also Wyatt**, 115 A.3d at 879. Because Woods failed to do so, we conclude that the trial court was entitled to consider the 2021 adjustment presumptively valid when calculating the running of Woods's original sentences for PWID and PIC. **See Reese**, 774 A.2d at 1262.

In sum, because Woods offered no factual or legal basis to look behind, or disturb, the 2021 adjustment by the DOC or Board, the trial court was entitled to rely on the 2021 adjustment when considering whether Woods was

still on probation when she committed the new drug offenses.[7] Pursuant to the 2021 adjustment, Woods's original state sentence for PWID ended in March 2024; the original probation sentence for PIC started that same month and would have ended in March 2025; and Woods committed the new drug offenses in June 2024, before the expiration of her original probation sentence for PIC. For these reasons, we discern no error in the trial court's consequent conclusions that the revocation proceeding, and imposition of a VOP sentence, were lawful, and we conclude Woods's challenge to the legality of VOP sentence merits no relief.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/22/2026

_____

[7] It bears noting that Woods presented no evidence that she was assured the time she spent on release during the pandemic would be credited to her PWID sentence or that she was subject to any restriction during that release. *Cf*. *Commonwealth v. Martz*, 42 A.3d 1142, 1149 (Pa. Super. 2012) (discussing credit for time spent while erroneously at liberty).